IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

TERRI BRAUN,                         )
                                     )
v.                                   )       CASE NO. CV419-101
                                     )
CADENCE HEALTHCARE SOLUTIONS,        )
LLC; WOODLANDS HEALTHCARE AND        )
REHAB, LLC; STACEY BROWN;            )
ERSULA HENDERSON; ELAINE             )
LAMBERT; JANELLE PERKINS;            )
TRENT TOLBERT; CHATTAHOOCHEE         )
NURSING, LLC; and CHRISTOPHER        )
BROGDON;                             )
                                     )
        Defendants.                  )
                                     )

## O R D E R

Before the Court is Defendants Chattahoochee Nursing, LLC ("Chattahoochee") and Christopher Brogdon's (collectively the "Landlord Defendants") Motion to Dismiss (Doc. 63), which Plaintiff Terri Braun has opposed (Doc. 75). After careful consideration, the Landlord Defendants' motion (Doc. 63) is **GRANTED IN PART** and **DENIED IN PART.**

### BACKGROUND

I.   PLAINTIFF'S RETALIATION CLAIMS

This case arises from Plaintiff's allegations that she was terminated in retaliation for exercising her rights under the Family Medical Leave Act of 1993 ("FMLA").[1] (Doc. 49 at ¶ 19.)

_____

[1] For the purposes of this Order, the Court will accept all factual allegations in Amended Complaint (Doc. 49) as true and construe

Around January 2015, Plaintiff began working as an occupational therapist for Defendant Woodlands Healthcare and Rehab, LLC, ("Woodlands") at a nursing home located in Midway, Georgia (the "Midway Facility).[2] (Doc. 49 at ¶¶ 28, 29.)

On February 14, 2018, Plaintiff suffered an injury to her lumbar spine while assisting patients. (Id. at ¶ 43.) The following day, February 15, 2018, Plaintiff reported her injury to her supervisor Defendant Ersula Henderson. (Id. at ¶ 44.) Plaintiff informed Henderson that she would be absent from work for the next two days so she could seek medical treatment. (Id. at ¶ 45.) Henderson voiced no objection to Plaintiff receiving treatment. (Id.) Dr. Howard Wasdin treated Plaintiff at Absolute Precision Chiropractic and ordered her to remain out of work from February 15, 2018, through February 28, 2018. (Id. at ¶ 46.) Plaintiff also received treatment at ExperCare where a healthcare professional recommended Plaintiff be placed on light duty work restrictions. (Id. at ¶ 47.)

On February 17, 2018, Plaintiff informed Henderson that she was seeking treatment from a specialist due to her persistent lower back pain stemming from her work injury and that she would miss

---

all allegations in the light most favorable to Plaintiff. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008).
[2] Because the parties sometimes refer to the nursing home as "Woodlands," the Court notes that it refers to Defendant Woodlands Healthcare and Rehab, LLC, as "Woodlands" and the physical location where Plaintiff worked as "the Midway Facility."

the entire week of February 19, 2018, through February 23, 2018. (Id. at ¶ 48.) Henderson made no objection to Plaintiff missing work at this time. (Id.) Defendant Elaine Lambert, Woodland's Human Resources and Payroll Director, also had actual knowledge that Plaintiff would be missing work and did not voice any objection to this circumstance. (Id. at ¶ 49.)

On February 22, 2018, Plaintiff requested FMLA paperwork from Henderson via text message and from Lambert in-person at the nursing home. (Id. at ¶ 50.) Neither Lambert nor Henderson provided Plaintiff with the requested FMLA paperwork at that time. (Id.) On February 26, 2018, Plaintiff traveled to the Midway Facility and, at 10:10 a.m., again requested that Lambert provide her with FMLA paperwork. (Id. at ¶ 51.) Approximately 20 minutes after requesting the FMLA paperwork, Plaintiff was terminated by Henderson; Lambert; Defendant Stacey Brown, a representative of Defendant Cadence Healthcare Solutions, LLC ("Cadence"); and Defendant Janelle Perkins, Woodlands' executive director. (Id. at ¶ 52.) A subsequent separation notice listed the bases for Plaintiff's termination as (1) "no call no show" and (2) "not following incident policy." (Id. at ¶ 53.) In later depositions, Henderson and Lambert admitted that Plaintiff did not commit a "no call no show" violation and did not violate any applicable incident policy. (Id. at ¶ 54.)

3

II.  OWNERSHIP AND CONTROL OF THE MIDWAY FACILITY

Woodlands held the permit needed to operate the Midway Facility. (Id. at ¶ 29.) Cadence was the management company responsible for operating the Midway Facility, and it controlled all aspects of the operation of the Midway Facility, including Plaintiff's employment. (Id. at ¶ 30.) Defendant Trent Tolbert was the sole owner and operator of Woodlands and Cadence. (Id. at ¶ 31.)

Defendant Christopher Brogdon was the sole owner and operator of Defendant Chattahoochee. (Id. at ¶ 32.) Tolbert and Brogdon were engaged in a joint venture to operate 20 nursing homes. (Id. at ¶ 33.) Chattahoochee leased the Midway Facility from Gordon Jensen Health Care Association, Inc., and sublet it to Woodlands. (Id. at ¶ 34.) Relevant to this order, Plaintiff alleges that the Landlord Defendants retained substantial control over the operation of Woodlands and its employees in order to ensure they maintained their facility's certificate of need, which was required for the Midway Facility to continue to operate. (Id. at ¶ 35.) Specifically, Plaintiff alleges that Chattahoochee retained substantial control over Woodlands' therapists, including Plaintiff. (Id. at ¶ 36.) Plaintiff alleges that because Woodlands, Cadence, Tolbert, Chattahoochee, and Brogdon all exercised control over Plaintiff at the Midway Facility, they all acted as her joint employer. (Id. at ¶¶ 38-42.)

4

III. <u>PROCEDURAL HISTORY</u>

On August 7, 2018, Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") against Cadence and Woodlands alleging age and disability discrimination. (Doc. 49 at ¶ 23; Doc. 63, Attach. 5 at 2-4.) The EEOC issued Plaintiff a notice of right to sue on February 7, 2019. (Doc. 49 at ¶ 24.) On May 7, 2019, Plaintiff filed her original complaint in this Court against Cadence, Woodlands, Brown, Henderson, Lambert, and Perkins. (Doc. 1.) On December 11, 2020, the Magistrate Judge granted Plaintiff's motion to file an amended complaint. (Doc. 45.) Plaintiff subsequently amended her complaint to add Defendants Tolbert, Chattahoochee, and Brogdon as defendants in the case. (Doc. 49.) In the Amended Complaint, Plaintiff asserts claims against all Defendants for retaliation and interference under the FMLA. (<u>Id.</u> at ¶¶ 63-71.) Plaintiff also asserts claims against Cadence, Woodlands, and Chattahoochee for disability discrimination under the Americans with Disabilities Act ("ADA") and age discrimination under the Age Discrimination in Employment Act ("ADEA"). (<u>Id.</u> at ¶¶ 72-85.) Now, the Landlord Defendants jointly move to dismiss Plaintiff's claims against them. (Doc. 63.)

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that

5

the pleader is entitled to relief[.]" "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " <u>Id.</u> (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 557, 127 S. Ct. at 1966).

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at 1974). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1261 (11th Cir. 2009) (quotation omitted), <u>abrogated on other grounds by Mohamad v. Palestinian Auth.</u>, 566 U.S. 449, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012). Plausibility does not require

probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quotations omitted).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Id. at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" Iqbal, 556 U.S. at 678, 129 S. Ct. at 1950. Moreover, " 'unwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1260 (quoting Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295–96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 556, 127 S. Ct. at 1966).

**ANALYSIS**

The Landlord Defendants advance several arguments in support of their motion to dismiss. In their initial brief, The Landlord Defendants fail to specify the Federal Rules of Civil Procedure on which their arguments are based. However, it is clear to the Court, and confirmed by their reply brief, that the Landlord Defendants move to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 8(a)(2), 10(b), 12(b)(1), and 12(b)(6). (Doc. 63, Attach. 1 at 6-23; Doc. 78 at 1-2.) Specifically, The Landlord Defendants contend (1) that the amended complaint fails to state plausible claim for relief which satisfies the Federal Rules of Civil Procedure; (2) that the amended complaint is a shotgun pleading and should be dismissed without leave to amend; (3) that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff failed to plausibly allege that The Landlord Defendants were her "employer" and failed to exhaust her administrative remedies; and (4) that the statute of limitations bars Plaintiff's claims against The Landlord Defendants.[3] (Doc. 63, Attach. 1 at 6-23.)

---

[3] Landlord Defendants also argue that Defendant Brogdon cannot be held liable under the ADA or ADEA as those statutes do not provide for individual liability. (Doc. 63, Attach. 1 at 20.) However, Plaintiff omitted Brogdon from the ADA and ADEA claims she included in her amended complaint. (Doc. 49 at 13-15.) Plaintiff also conceded in her response to the motion to dismiss that she did not intend to assert an ADA or ADEA claim against Brogdon. (Doc. 75 at 18.) Accordingly, no further discussion of this issue is necessary.

The Court will address these issues as follows. Because it affects the propriety of Plaintiff's entire amended complaint, the Court will first explain why the pleading is not subject to dismissal as a shotgun pleading. Next, the Court will outline the evidentiary standards that govern Landlord Defendant's motion to dismiss. Finally, the Court will explain why Plaintiff's claims against The Landlord Defendants are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[4]

I.   SHOTGUN PLEADING

"Shotgun pleadings violate Fed. R. Civ. P. 8's requirement that a complaint contain a short and plain statement of the claim, and courts in this Circuit 'have little tolerance for shotgun pleadings.' " Sarhan v. Miami Dade Coll., 800 F. App'x 769, 771 (11th Cir. 2020) (per curiam) (quoting Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)). "A shotgun pleading makes it difficult, if not impossible, for the Court and defendants to understand what claims are alleged and against which defendant the claims are asserted." See Harper v. Bd. of Pub. Edu., No. CV420-139, 2021 WL 2556695, at *3 (S.D. Ga. June 22, 2021) (first citing Adams v. Huntsville Hosp., 819 F. App'x 836, 838

[4] Because the Court finds Plaintiff's claims are due to be dismissed under Rule 12(b)(6), the Court does not reach the statute of limitations issue raised in the parties' briefs.

(11th Cir. 2020) (per curiam); and then citing <u>Anderson v. Dist. Bd. of Trs. Cent. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366-67 (11th Cir. 1996)). Complaints are typically identified as shotgun pleadings if they contain one of four main categories of deficiencies. <u>See</u> <u>Weiland v. Palm Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (summarizing "four rough types or categories of shotgun pleadings"). Specifically,

> [s]hotgun pleadings include complaints that: (1) contain multiple counts where each count adopts the allegations of all preceding counts; (2) do not re-allege all the proceeding counts but are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) do not separate each cause of action or claim for relief into separate counts; or (4) in a multi-defendant action, contain counts that present a claim for relief without specifying which defendants the claim is brought against.

<u>Sarhan</u>, 800 F. App'x at 771-72 (internal quotation marks omitted) (citing <u>Weiland</u>, 792 F.3d at 1321-23).

The Landlord Defendants contend that Plaintiff's amended complaint violates the prohibition against shotgun pleadings for three reasons: first, each count in the amended complaint incorporates the allegations of all preceding counts; second, Plaintiff fails to adequately identify which defendants are being sued for which claims; third, the counts do not include specific allegations that describe how the Landlord Defendants controlled the Plaintiff's employment or participated in Plaintiff's termination. (Doc. 63, Attach. 1 at 9-10.)

10

Plaintiff responds that she only incorporated the factual allegations in her complaint into each of the separate counts—a type of incorporation that does not create a shotgun pleading. (Doc. 75 at 11.) Plaintiff also avers that the amended complaint includes several factual allegations that support The Landlord Defendants' status as Plaintiff's joint employer. (Id. at 12.) Lastly, Plaintiff states that she is not required to allege that The Landlord Defendants participated in her termination to state a claim against them under the FMLA, ADA, or ADEA. (Id.) The Court will now address whether Plaintiff's amended complaint violates the prohibition against shotgun pleadings.

First, because there seems to be some confusion on this issue, the Court must explain that Federal Rules of Civil Procedure 8(a)(2) and 10(b)—both of which shotgun pleadings may violate—differ from Rules 12(b)(1) and 12(b)(6) in that the former govern the form of a pleading, whereas the latter govern the substance. Barmapov v. Amuial, 986 F.3d 1321, 1331 n.4 (11th Cir. 2021) (Tjoflat, J., concurring). The Landlord Defendants' argument that Plaintiff failed to allege specific facts showing they acted as Plaintiff's employer goes directly to the substance of the complaint, which the Court will address in its Rule 12(b) analysis, and does not show the existence of a shotgun pleading.

11

Likewise, Plaintiff's use of incorporation by reference does not, by itself, warrant dismissal.[5] Even if the incorporation creates some slight ambiguity, an honest reading of the allegations within each count make clear what claims Plaintiff is alleging and against which Defendants Plaintiff is alleging those claims. See Roche Diagnostics Corp. v. Priority Healthcare Corp., 407 F. Supp. 3d 1216, 1237 (N.D. Ala. 2019) ("Although the statement incorporating all previous paragraphs by reference is a poor—albeit extremely common—practice, that fact alone is insufficient to make a complaint a shotgun pleading when the plaintiff does re-allege appropriate specific facts in each count."); Cajun Steamer Ventures, LLC v. Thompson, 402 F. Supp. 3d 1328, 1337 (N.D. Ala. 2019) (finding incorporation by reference did not create shotgun pleading because "each count [did] include a few general facts in support of the allegation"); cf. Harper, 2021 WL 2556695, at *3-4 (dismissing complaint in which plaintiff alleged numerous constitutional and statutory violations but "fail[ed] to explain

---

[5] The Court must note, however, that Plaintiff's assertion that she merely incorporated by reference certain factual allegations is, as she framed Landlord Defendants' argument, "disingenuous as best." (Doc. 75 at 11.) Each count in the amended complaint contains the identical allegation that "[a]ll preceding paragraphs are incorporated herein by reference." (Doc. 49 at ¶¶ 63, 68, 72, 79.) This is the exact kind of blanket incorporation by reference the Eleventh Circuit has consistently admonished. See Weiland, 792 F.3d at 1321 n.11 (collecting cases). By not dismissing Plaintiff's complaint as a shotgun pleading, the Court in no way means to encourage or otherwise approve of Plaintiff's use of this injudicious practice.

which violations appl[ied] to which of the named defendants"). The remainder of Landlord Defendant's brief, in which they attack each count of Plaintiff's complaint on Rule 12(b) grounds, further persuades the Court that Plaintiff's amended complaint gave The Landlord Defendants sufficient notice of the claims against which they were required to mount a defense. Accordingly, the Landlord Defendants' motion (Doc. 63) is **DENIED IN PART** to the extent they seek dismissal of the amended complaint on shotgun pleading grounds.

## II.   EVIDENCE OUTSIDE OF THE COMPLAINT

Before examining the merits of Plaintiff's allegations, the Court must define the limits of its inquiry. As stated previously, the Landlord Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has not demonstrated that they are employers as defined by the relevant statutes and Plaintiff failed to exhaust her administrative remedies with respect to her claims under the ADA and ADEA. (Doc. 63, Attach. 1 at 11-20.) In support of their argument, the Landlord Defendants ask the Court to look beyond the four corners of the complaint and consider the deposition testimony of Christopher Brogdon and Trent Tolbert and the contents of Plaintiff's EEOC complaint. (Doc. 63, Attachs. 2-5.) The Landlord Defendants contend that it is proper for the Court to look beyond the pleadings to evaluate the existence of subject matter

13

jurisdiction. (Doc. 63, Attach. 1 at 17 n.6 (citing Glob. Aerospace, Inc. v. Platinum Jet Mgmt., LLC, 488 F. App'x 338, 340 n.2 (11th Cir. 2012).)

Courts will dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) upon a finding that the complaint fails to allege a sufficient basis for the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction fall into two categories, facial attacks and factual attacks. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Facial attacks "require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Id. (quotation omitted) (alteration in original). In ruling on a facial challenge, courts must presume the truthfulness of the allegations in the complaint. Id. (quotation omitted). Conversely, factual attacks "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.' " Hidalgo Canevaro v. Wolf, 540 F. Supp. 3d 1235, 1240 (N.D. Ga. 2021) (quoting Lawrence, 919 F.2d at 1529)). In this case, Plaintiff concedes that the Landlord Defendants are lodging a factual attack to this Court's subject matter jurisdiction. (Doc. 75 at 13.)

However, a further intricacy exists in this case which Plaintiff addresses in her responsive brief. (Doc. 75 at 17.) The situation becomes more complicated when a factual attack on subject matter jurisdiction is inextricably intertwined with the merits of the cause of action. In such a case

> [t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case . . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . . both of which place great restrictions on the district court's discretion . . . . [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

Lawrence, 919 F.2d at 1529 (quoting Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir. 1981)[6]).

The Eleventh Circuit has held that a factual attack on an individual's "employer" status under the ADEA goes to the merits of the cause of action, and a presiding judge errs if they resolve

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

questions of fact pursuant to Rule 12(b)(1) in deciding the issue. _Garcia v. Copehaver, Bell & Assocs., M.D.'s, P.A._, 104 F.3d 1256, 1258 (11th Cir. 1997). In such a case, "the proper procedure for a district court is to assume jurisdiction and utilize the standards associated with a 12(b)(6) motion or Rule 56 motion for summary judgment." _Id._ The Court finds that this rule applies with equal force to claims brought under the ADA or FMLA since the question of whether a defendant is an "employer" is a determinative element of claims brought under either statute, as the Court discusses later in this order. _See Jones v. Ga. Dep't of Comty. Health_, No. 1:20-cv-03225-CAP-CMS, 2021 WL 2593638, at *3 (N.D. Ga. May 28, 2021) (finding that whether defendant "is or is not an 'employer' (as defined under the FMLA) goes to the merits of the plaintiff's case" (citing _Garcia_, 104 F.3d at 1258)). Because the Court declines to convert Landlord Defendant's motion into a motion for summary judgment, the Court will adhere to the strictures of Rule 12(b)(6) in determining whether Plaintiff properly alleged that the Landlord Defendants acted as her employer. _See Harper v. Lawrence Cnty._, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings.").

Yet, even under Rule 12(b)(6), the Court can consider extraneous documents without converting a Rule 12(b) motion into

a Rule 56 motion if (1) the document is central to the plaintiff's claim, and (2) its authenticity of the document is undisputed. Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted). In this case, neither party disputes the authenticity of the EEOC complaint attached to Defendant's motion or its centrality to Plaintiff's claims. (Doc. 63, Attach. 5.) Accordingly, the Court may consider the EEOC complaint when ruling on the motion to dismiss without exceeding the parameters of Rule 12(b)(6).[7] The same cannot be said about the deposition testimony of Tolbert and Brogdon. Although some of the material contained in the Landlord Defendants' attached deposition transcripts may be central to Plaintiff's claims, much is certainly not. Furthermore, Plaintiff has raised questions about the veracity of Brogdon's deposition testimony. (Doc. 75 at 10.) Out of an abundance of caution, the Court will not consider the attached deposition transcripts in deciding whether Plaintiff properly alleged that the Landlord Defendants were her employer. McKleroy v. Jacksonville Health & Rehab., LLC, No. 1:19-CV-01414-CLM, 2019 WL 6133849, at *2 (N.D. Ala. Nov. 19, 2019) (finding it appropriate

---

[7] As a practical matter, consideration of the EEOC complaint has little, if any, effect on the outcome of this order. The EEOC complaint makes no mention of the Landlord Defendants and provides no information into their involvement, or lack thereof, in Plaintiff's employment and termination from the Midway Facility. (Doc. 63, Attach. 5 at 2-4.)

to consider EEOC charge but not deposition or declaration to rule on Rule 12(b)(6) motion to dismiss).

III. <u>RULE 12(b)(6) FAILURE TO STATE A CLAIM</u>

The Landlord Defendants argue that Plaintiff's claims fail under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff failed to allege any facts that show how the Landlord Defendants exercised control over her employment. (Doc. 63, Attach. 1 at 7-8.) Landlord Defendants appear to be arguing that Plaintiff failed to allege facts supporting an essential element of all her claims—that the Landlord Defendants acted as her employer. (<u>Id.</u>) In their reply brief, the Landlord Defendants contend that Plaintiff's allegations regarding their control over the Woodlands facility are conclusory and not entitled to the presumption of truth. (Doc. 78 at 2-3.) The Court notes that the Landlord Defendants do not cite to a single case addressing what is required to state a claim under the FMLA, ADA, and ADEA.

In response, however, Plaintiff seems to concede that she needed to allege facts supporting an employment relationship between herself and the Landlord Defendants. (Doc. 75 at 11.) Plaintiff argues that she has alleged facts that plausibly support a finding that the Landlord Defendants were Plaintiff's joint employers under the FMLA and that Chattahoochee was Plaintiff's joint employer under the ADA and ADEA. (Doc. 75 at 8.) Plaintiff also argues that the Landlord Defendants acted as an integrated

enterprise with Defendants Cadence and Woodlands. (<u>Id.</u> at 8.) Like the Landlord Defendants, Plaintiff fails to cite to any cases that discuss claims brought under the FMLA, ADA, or ADEA in the context of a Rule 12(b)(6) evaluation. Nevertheless, the Court will proceed to determine whether Plaintiff has alleged facts sufficient to state a plausible claim for relief.

A. <u>FMLA Claims</u>

An interference claim lies under the FMLA when an employer denies or otherwise interferes with an employee's rights under the statute, whereas a retaliation claim lies when an employer discriminates against an employee because she engaged in activity protected by the FMLA. <u>Phifer v. Hyundai Power Transformers USA</u>, 522 F. Supp. 3d 1102, 1110 (M.D. Ala. 2021) (quoting <u>Strickland v. Water Works & Sewer Bd.</u>, 239 F.3d 1199, 1206 (11th Cir. 2001)). To state a claim of interference, a plaintiff must allege that his employer "denied or otherwise interfered with his substantive rights under the Act[.]" <u>Id.</u>; <u>see also</u> <u>Alvarez v. Lakeland Area Mass Transit Dist.</u>, 406 F. Supp. 3d 1348, 1356 (M.D. Fla. 2019) ("An interference claim occurs when an employer interferes with, restrains, or denies the exercise or attempted exercise of FMLA rights or benefits." (quoting <u>Hogancamp v. Cnty. of Volusia</u>, 316 F. Supp. 3d 1354, 1358 (M.D. Fla. 2018))). "To state a claim of retaliation under the FMLA, 'an employee must allege that (1) [she] engaged in a statutorily protected activity; (2) [she] suffered an

it is used in the FMLA." <u>Phifer</u>, 522 F. Supp. 3d at 1113 (quoting <u>Wascura v. Carver</u>, 169 F.3d at 683, 686 (11th Cir. 1999)).

In this case, Plaintiff argues that the Landlord Defendants qualify as FMLA employers under either the "integrated enterprise" or the "joint employer" tests.[8] (Doc. 75 at 8.) The "integrated enterprise" test asks whether two companies are so interrelated in their operations and interests that they should be treated as a single employer. <u>See</u> <u>Morrison v. Amway Corp.</u>, 336 F. Supp. 2d 1193, 1199 (M.D. Fla. 2003) (citation omitted). In making this inquiry, the Department of Labor has instructed courts to consider the following factors: (i) common management; (ii) interrelation between operations; (iii) centralized control of labor relations; and (iv) degree of common ownership/financial control. 29 C.F.R. § 825.104(c)(2). Additionally, the Department of Labor states that otherwise distinct and independent companies may be considered an individual's "joint employer"

> (1) where there is an arrangement between employers to share an employee's services or to interchange employees; (2) Where one employer acts directly or indirectly in the interests of the other employer in relation to the employee; or, (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

---

[8] Defendants may also face liability under the FMLA if they are found to be a plaintiff's direct employer. Plaintiff does not argue in her brief that Landlord Defendants were her direct employer so the Court does not address this avenue for establishing liability.

adverse employment decision; and (3) the decision was causally related to the protected activity." Walker v. Elmore Cnty. Bd. of Educ., 379 F.3d 1249, 1252 (11th Cir. 2004) (quoting Strickland, 239 F.3d at 1207).

Relevant to this order, it is beyond doubt that "only a worker's **employer** is liable for interfering with FMLA rights or retaliating against those who seek to use those rights or complain of such interference." See Phifer, 522 F. Supp. 3d at 1113 (emphasis added). As a result, "in order to state a claim for interference or retaliation under the FMLA, a defendant must meet the statutory definition of [an] 'employer[.]' " Howard v. MHT USA LLC, 1:21-cv-04570-CAP-RGV, 2022 WL-2389277, at *5 (N.D. Ga. May 2, 2022) (quotation omitted). Under the statute, the term employer "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;" and "includes (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and (II) any successor in interest of an employer[.]" 29 U.S.C. § 2611 4(A). Admittedly, the Eleventh Circuit has provided scant instruction into the meaning of the term "employer" under the FMLA, but it has indicated that "decisions interpreting the [Fair Labor Standards Act] offer the best guidance for construing the term 'employer' as

29 C.F.R. § 825.106(a).

In her amended complaint, Plaintiff alleges that the Landlord Defendants jointly employed Plaintiff along with Defendants Woodlands, Cadence, and Tolbert. (Doc. 49 at ¶ 38.) Plaintiff alleges that the Landlord Defendants retained substantial control over the operation of Woodlands and its employees because, among other reasons, they feared losing the facility's "certificate of need," which was required for Woodlands to operate as a nursing home. (Id. at ¶ 35.) Plaintiff alleges that the Landlord Defendants contracted with Defendants Woodlands, Cadence, and Tolbert to manage, operate, and control the nursing home. (Id. at ¶ 41.) Plaintiff further alleges that Defendants employed 50 or more employees for each working day of 20 or more calendar workweeks in the current or preceding calendar year. (Id. at ¶ 57.) The Court finds that the allegations are insufficient to state a plausible claim that the Landlord Defendants acted as Plaintiff's joint employer or an integrated enterprise with Woodlands and Cadence under the FMLA.

As the Landlord Defendants highlight, the only specific fact Plaintiff alleges regarding the Landlord Defendants' relationship to the other Defendants is that they were the lessors of the Woodlands facility. (Doc. 63, Attach. 1 at 15.) The remainder of Plaintiff's allegations about the Landlord Defendants'

"substantial control" over Woodland's employees are legal conclusions not tied to any specific factual allegation and not entitled to the presumption of truthfulness. See Howard, 2022 WL 2389277, at *8 (finding in the context of FMLA claim that "proposed amended complaint's 'legal conclusions' that '[d]efendants are employers' and that Defendant was involved in the operations and decision-making of a separate company are not 'factual allegations' " (internal citations omitted)). Further, the fact that the Landlord Defendants were dependent on Woodlands and Cadence successfully running a nursing facility to ensure their lease agreement was maintained does not, by itself, give rise to a reasonable inference that the Landlord Defendants controlled the operations of the Midway Facility. See Blake v. Batmasian, 191 F. Supp. 3d 1370, 1377 (S.D. Fla. 2016) (dismissing FLSA claim plaintiff brought against his direct employer's payroll company because there were no allegations that plaintiff provided services that benefited payroll company); Morrison, 336 F. Supp. 2d at 1200 (finding that NBA team's lease of charter plane did not make them a joint employer of the plaintiff pilot, because the team had "neither actual control or power to control" the charter company's employees (citing Virgo v. Riviera Beach Assocs., 30 F.3d 1350, 1361 (11th Cir. 1994))); see also Lopez v. Assurance Quality Grp., Inc., No. 3:13-CV-077-TCB-RGV, 2013 WL 12090613, at *5 (N.D. Ga. Nov. 8, 2013) ("Mere allegations of 'mutually convenient

arrangements' and 'arms-length' contractual relations between entities, however, are insufficient to establish joint employer status [in a Title VII case]." (citing <u>Fike v. Gold Kist, Inc.</u>, 514 F. Supp. 722, 727 (N.D. Ala. 1981))).

Furthermore, Plaintiff has not alleged any facts which indicate that the Landlord Defendants shared common management or ownership with Defendants Cadence, Woodlands, or Tolbert. Notably, Plaintiff has not alleged, other than in a conclusory fashion, that the Landlord Defendants were involved in, or even otherwise aware of, Plaintiff's termination from Woodlands. See <u>Howard</u>, 2022 WL 2389277, at *8 (finding no integrated enterprise in part because the plaintiff "ha[d] not alleged any facts to support his assertion that [defendant] actually had control over the employment decisions at issue"). For these reasons, the Court finds that Plaintiff has not sufficiently alleged that Landlord Defendants acted as her joint employer or an integrated enterprise with Cadence and Woodlands under the FMLA, and the Landlord Defendants' motion to dismiss Plaintiff's FMLA claims against them is **GRANTED IN PART.**

B. <u>ADA and ADEA Claims</u>

Similar to the FMLA, both the ADA and the ADEA grant relief only against an "employer". See <u>Barkley v. StackPath, LLC</u>, No. 1:21-cv-3763-JPB-CMS, 2022 WL 3137999, at *2 (N.D. Ga. Jan. 20, 2022) ("The relief granted under the ADEA is against the employer

only." (citing <u>Smith v. Lomax</u>, 45 F.3d 402, 403 n.4 (11th Cir.
1995))). When questioning whether a defendant is an "employer"
under these statutes, courts will apply rules used in Title VII
cases. <u>See</u> <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 830 (11th Cir. 2007)
("The ADA's definition of 'employer' is similar to that under Title
VII and the [ADEA.]"); <u>Brown v. ATG, Inc.</u>, No. 2:15-cv-161-AKK,
2015 WL 3545984, at *3 (N.D. Ala. June 8, 2015) (applying Title
VII "joint employer" test to ADA claim on motion to dismiss (citing
<u>Lyes v. City of Riviera Beach</u>, 166 F.3d 1332, 1341 (11th Cir.
1999))). Courts in these cases apply both the joint employer and
integrated enterprise tests to determine if multiple defendants
should be aggregated for purposes of employer liability. <u>See</u> <u>Lyes</u>,
166 F.3d at 1341.

As she did with her FMLA claims, Plaintiff makes identical
arguments that Chattahoochee qualifies as her employer under the
ADA and ADEA because it satisfies the joint employer or the
integrated enterprise test. (Doc. 75 at 8.) Plaintiff, however,
provides no reason that the Court should reach a different
conclusion on her ADA and ADEA claims than it did for her FMLA
claims. For the purposes of this order, the Court finds the joint
employer and integrated enterprise tests are functionally
equivalent when applied to Plaintiff's claims under each of these

statutes.[9] Therefore, for the reasons previously announced, the Court finds that Plaintiff has not alleged facts which give rise to a reasonable inference that Chattahoochee acted as Plaintiff's employer under the ADA or the ADEA.[10] As a result, the Landlord Defendants' motion to dismiss (Doc. 63) is **GRANTED IN PART** to the extent Chattahoochee requests dismissal of Plaintiff's ADA and ADEA claims.[11]

### CONCLUSION

Based on the foregoing, the Landlord Defendants' motion to dismiss (Doc. 63) is **DENIED IN PART** to the extent they seek dismissal of Plaintiff's amended complaint as a shotgun pleading. However, the Landlord Defendants' motion to dismiss (Doc. 63) is **GRANTED IN PART** to the extent they seek dismissal of Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff has previously had an opportunity to amend her complaint and has not filed an additional motion to amend her complaint, Plaintiff's claims against the Landlord Defendants are **DISMISSED WITH PREJUDICE**. See Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is

---

[9] Compare Lyes, 166 F.3d at 1341 (11th Cir. 1999); with 29 C.F.R. § 825.104(c)(2) and 29 C.F.R. § 825.106(a).

[10] In fact, Plaintiff argues that the definition of "employer" is broader under the FMLA than the ADA and ADEA. (Doc. 75 at 6.)

[11] Because the Court finds Plaintiff's claims against Landlord Defendants are due to be dismissed for failure to state a claim, the Court does not reach the issue of administrative exhaustion.

not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.") Plaintiff's claims against Defendants Cadence, Woodlands, Brown, Henderson, Lambert, Perkins, and Tolbert remain pending.

SO ORDERED this _18th_ day of August 2022.


_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA